ORIGINAL

FILED

1   NICOLA T. HANNA
    United States Attorney
2   BRANDON D. FOX
    Assistant United States Attorney
3   Chief, Criminal Division
    MACK E. JENKINS (Cal. Bar No. 242101)
4   Assistant United States Attorney
    Chief, Public Corruption & Civil Rights Section
5   VERONICA DRAGALIN (Cal. Bar No. 281370)
    Assistant United States Attorneys
6   Public Corruption & Civil Rights Section
         1500 United States Courthouse
7        312 North Spring Street
         Los Angeles, California 90012
8        Telephone: (213) 894-2091/0647/0627
         Facsimile: (213) 894-6436
9        E-mail:   mack.jenkins@usdoj.gov
                   veronica.dragalin@usdoj.gov
10

    Attorneys for Plaintiff
11  UNITED STATES OF AMERICA

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14  UNITED STATES OF AMERICA,        No. CR 20 CR 00 154

15             Plaintiff,            COOPERATION PLEA AGREEMENT FOR
                                     DEFENDANT JUSTIN JANGWOO KIM
16             v.

17  JUSTIN JANGWOO KIM,

18             Defendant.

19

20       1.   This constitutes the plea agreement between JUSTIN JANGOO

21  KIM ("defendant") and the United States Attorney's Office for the

22  Central District of California ("the USAO") in the above-captioned

23  case.  This agreement is limited to the USAO and cannot bind any

24  other federal, state, local, or foreign prosecuting, enforcement,

25  administrative, or regulatory authorities.

26                     DEFENDANT'S OBLIGATIONS

27       2.   Defendant agrees to:

28

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit 1 or a substantially similar form, which charges defendant with Federal Program Bribery, in violation of 18 U.S.C. §§ 666(a)(2), 2(a).

b.   Not contest the Factual Basis agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

3.   Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation ("FBI"), and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated March 19, 2019 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

<u>THE USAO'S OBLIGATIONS</u>

5.   The USAO agrees to:

a.   Not contest the Factual Basis agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

3

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3       6.   The USAO further agrees:

4            a.   Not to offer as evidence in its case-in-chief in the

5  above-captioned case or any other criminal prosecution that may be

6  brought against defendant by the USAO, or in connection with any

7  sentencing proceeding in any criminal case that may be brought

8  against defendant by the USAO, any Cooperation Information.

9  Defendant agrees, however, that the USAO may use both Cooperation

10  Information and Plea Information: (1) to obtain and pursue leads to

11  other evidence, which evidence may be used for any purpose, including

12  any criminal prosecution of defendant; (2) to cross-examine defendant

13  should defendant testify, or to rebut any evidence offered, or

14  argument or representation made, by defendant, defendant's counsel,

15  or a witness called by defendant in any trial, sentencing hearing, or

16  other court proceeding; and (3) in any criminal prosecution of

17  defendant for false statement, obstruction of justice, or perjury.

18            b.   Not to use Cooperation Information against defendant

19  at sentencing for the purpose of determining the applicable guideline

20  range, including the appropriateness of an upward departure, or the

21  sentence to be imposed, and to recommend to the Court that

22  Cooperation Information not be used in determining the applicable

23  guideline range or the sentence to be imposed.  Defendant

24  understands, however, that Cooperation Information will be disclosed

25  to the United States Probation and Pretrial Services Office and the

26  Court, and that the Court may use Cooperation Information for the

27  purposes set forth in U.S.S.G § 1B1.8(b) and for determining the

28  sentence to be imposed.

1          c.   In connection with defendant's sentencing, to bring to

2    the Court's attention the nature and extent of defendant's

3    cooperation.

4          d.   If the USAO determines, in its exclusive judgment,

5    that defendant has both complied with defendant's obligations under

6    paragraphs 2 and 3 above and provided substantial assistance to law

7    enforcement in the prosecution or investigation of another

8    ("substantial assistance"), to move the Court pursuant to U.S.S.G.

9    § 5K1.1 to fix an offense level and corresponding guideline range

10   below that otherwise dictated by the sentencing guidelines, and to

11   recommend a term of imprisonment within this reduced range.

12       <u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

13      7.   Defendant understands the following:

14         a.   Any knowingly false or misleading statement by

15   defendant will subject defendant to prosecution for false statement,

16   obstruction of justice, and perjury and will constitute a breach by

17   defendant of this agreement.

18         b.   Nothing in this agreement requires the USAO or any

19   other prosecuting, enforcement, administrative, or regulatory

20   authority to accept any cooperation or assistance that defendant may

21   offer, or to use it in any particular way.

22         c.   Defendant cannot withdraw defendant's guilty plea if

23   the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

24   reduced guideline range or if the USAO makes such a motion and the

25   Court does not grant it or if the Court grants such a USAO motion but

26   elects to sentence above the reduced range.

27         d.   At this time the USAO makes no agreement or

28   representation as to whether any cooperation that defendant has

1  provided or intends to provide constitutes or will constitute

2  substantial assistance.  The decision whether defendant has provided

3  substantial assistance will rest solely within the exclusive judgment

4  of the USAO.

5          e.   The USAO's determination whether defendant has

6  provided substantial assistance will not depend in any way on whether

7  the government prevails at any trial or court hearing in which

8  defendant testifies or in which the government otherwise presents

9  information resulting from defendant's cooperation.

10                    NATURE OF THE OFFENSES

11      8.   Defendant understands that for defendant to be guilty of

12  the crime charged in count one, that is, Federal Program Bribery, in

13  violation of 18 U.S.C. §§ 666(a)(2), 2(a), the following must be

14  true: (1) Councilmember A was an agent of a local government; (2)

15  defendant corruptly gave, offered, or agreed to give anything of

16  value to Councilmember A; (3) defendant intended to influence or

17  reward Councilmember A in connection with any business, transaction,

18  or series of transactions of the local government involving anything

19  of value of $5,000 or more; and (4) the local government received, in

20  any one-year period, benefits in excess of $10,000 under a Federal

21  program involving a grant, contract, subsidy, loan, guarantee,

22  insurance, or other form of Federal assistance.

23                         PENALTIES

24      9.   Defendant understands that the statutory maximum sentence

25  that the Court can impose for a violation of 18 U.S.C. § 666(a)(2),

26  is: 10 years' imprisonment; a 3-year period of supervised release; a

27  fine of $250,000 or twice the gross gain or gross loss resulting from

28

1 the offense, whichever is greatest; and a mandatory special

2 assessment of $100.

3   10. Defendant understands that supervised release is a period

4 of time following imprisonment during which defendant will be subject

5 to various restrictions and requirements.  Defendant understands that

6 if defendant violates one or more of the conditions of any supervised

7 release imposed, defendant may be returned to prison for all or part

8 of the term of supervised release authorized by statute for the

9 offense that resulted in the term of supervised release, which could

10 result in defendant serving a total term of imprisonment greater than

11 the statutory maximum stated above.

12   11. Defendant understands that, by pleading guilty, defendant

13 may be giving up valuable government benefits and valuable civic

14 rights, such as the right to vote, the right to possess a firearm,

15 the right to hold office, and the right to serve on a jury.

16 Defendant understands that he is pleading guilty to a felony and that

17 it is a federal crime for a convicted felon to possess a firearm or

18 ammunition.  Defendant understands that the conviction in this case

19 may also subject defendant to various other collateral consequences,

20 including but not limited to revocation of probation, parole, or

21 supervised release in another case and suspension or revocation of a

22 professional license.  Defendant understands that unanticipated

23 collateral consequences will not serve as grounds to withdraw

24 defendant's guilty plea.

25         FACTUAL BASIS

26   12. Defendant admits that defendant is, in fact, guilty of the

27 offense to which defendant is agreeing to plead guilty.  Defendant

28 and the USAO agree to the statement of facts attached hereto as

Attachment A and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

13.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

14.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2C1.1(a)(1) |
| Bribe Value >$250,000: | +12 | U.S.S.G. §§ 2C1.1(b)(2); 2B1.1(b)((1)((G) |
| Elected Official: | +4 | U.S.S.G. § 2C1.1(b)(3) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

1    15.   Defendant understands that there is no agreement as to

2  defendant's criminal history or criminal history category.

3    16.   Defendant and the USAO reserve the right to argue for a

4  sentence outside the sentencing range established by the Sentencing

5  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

6  (a)(2), (a)(3), (a)(6), and (a)(7).

7                WAIVER OF CONSTITUTIONAL RIGHTS

8    17.   Defendant understands that by pleading guilty, defendant

9  gives up the following rights:

10         a.   The right to persist in a plea of not guilty.

11         b.   The right to a speedy and public trial by jury.

12         c.   The right to be represented by counsel – and if

13  necessary have the Court appoint counsel – at trial.  Defendant

14  understands, however, that, defendant retains the right to be

15  represented by counsel – and if necessary have the Court appoint

16  counsel – at every other stage of the proceeding.

17         d.   The right to be presumed innocent and to have the

18  burden of proof placed on the government to prove defendant guilty

19  beyond a reasonable doubt.

20         e.   The right to confront and cross-examine witnesses

21  against defendant.

22         f.   The right to testify and to present evidence in

23  opposition to the charges, including the right to compel the

24  attendance of witnesses to testify.

25         g.   The right not to be compelled to testify, and, if

26  defendant chose not to testify or present evidence, to have that

27  choice not be used against defendant.

28

1              h.    Any and all rights to pursue any affirmative defenses,

2    Fourth Amendment or Fifth Amendment claims, and other pretrial

3    motions that have been filed or could be filed.

4                        WAIVER OF APPEAL OF CONVICTION

5         18.   Defendant understands that, with the exception of an appeal

6    based on a claim that defendant's guilty plea was involuntary, by

7    pleading guilty defendant is waiving and giving up any right to

8    appeal defendant's conviction on the offense to which defendant is

9    pleading guilty.  Defendant understands that this waiver includes,

10   but is not limited to, arguments that the statute to which defendant

11   is pleading guilty is unconstitutional, and any and all claims that

12   the statement of facts provided herein is insufficient to support

13   defendant's plea of guilty.

14              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15        19.   Defendant agrees that, provided the Court imposes a total

16   term of imprisonment of no more than 57 months, defendant gives up

17   the right to appeal all of the following: (a) the procedures and

18   calculations used to determine and impose any portion of the

19   sentence; (b) the term of imprisonment imposed by the Court; (c) the

20   fine imposed by the Court, provided it is within the statutory

21   maximum; (d) to the extent permitted by law, the constitutionality or

22   legality of defendant's sentence, provided it is within the statutory

23   maximum; (e) the term of probation or supervised release imposed by

24   the Court, provided it is within the statutory maximum; and (g) any

25   of the following conditions of probation or supervised release

26   imposed by the Court: the conditions set forth in General Order 18-10

27   of this Court; the drug testing conditions mandated by 18 U.S.C.

28   §§ 3563(a)(5) and 3583(d).

20.   The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible.

### EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of

1  defendant's obligations under this agreement ("a breach"), the USAO
2  may declare this agreement breached.  For example, if defendant
3  knowingly, in an interview, before a grand jury, or at trial, falsely
4  accuses another person of criminal conduct or falsely minimizes
5  defendant's own role, or the role of another, in criminal conduct,
6  defendant will have breached this agreement.  All of defendant's
7  obligations are material, a single breach of this agreement is
8  sufficient for the USAO to declare a breach, and defendant shall not
9  be deemed to have cured a breach without the express agreement of the
10  USAO in writing.  If the USAO declares this agreement breached, and
11  the Court finds such a breach to have occurred, then:

12          a.    If defendant has previously entered a guilty plea
13  pursuant to this agreement, defendant will not be able to withdraw
14  the guilty plea.

15          b.    The USAO will be relieved of all its obligations under
16  this agreement; in particular, the USAO: (i) will no longer be bound
17  by any agreements concerning sentencing and will be free to seek any
18  sentence up to the statutory maximum for the crime to which defendant
19  has pleaded guilty; and (iii) will no longer be bound by any
20  agreement regarding the use of Cooperation Information and will be
21  free to use any Cooperation Information in any way in any
22  investigation, criminal prosecution, or civil, administrative, or
23  regulatory action.

24          c.    The USAO will be free to criminally prosecute
25  defendant for false statement, obstruction of justice, and perjury
26  based on any knowingly false or misleading statement by defendant.

27          d.    In any investigation, criminal prosecution, or civil,
28  administrative, or regulatory action: (i) defendant will not assert,

12

1  and hereby waives and gives up, any claim that any Cooperation

2  Information was obtained in violation of the Fifth Amendment

3  privilege against compelled self-incrimination; and (ii) defendant

4  agrees that any Cooperation Information and any Plea Information, as

5  well as any evidence derived from any Cooperation Information or any

6  Plea Information, shall be admissible against defendant, and

7  defendant will not assert, and hereby waives and gives up, any claim

8  under the United States Constitution, any statute, Rule 410 of the

9  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

10  Criminal Procedure, or any other federal rule, that any Cooperation

11  Information, any Plea Information, or any evidence derived from any

12  Cooperation Information or any Plea Information should be suppressed

13  or is inadmissible.

14  <u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

15  <u>OFFICE NOT PARTIES</u>

16       24.  Defendant understands that the Court and the United States

17  Probation and Pretrial Services Office are not parties to this

18  agreement and need not accept any of the USAO's sentencing

19  recommendations or the parties' agreements to facts or sentencing

20  factors.

21       25.  Defendant understands that both defendant and the USAO are

22  free to: (a) supplement the facts by supplying relevant information

23  to the United States Probation and Pretrial Services Office and the

24  Court, (b) correct any and all factual misstatements relating to the

25  Court's Sentencing Guidelines calculations and determination of

26  sentence, and (c) argue on appeal and collateral review that the

27  Court's Sentencing Guidelines calculations and the sentence it

28  chooses to impose are not error, although each party agrees to

maintain its view that the calculations in paragraph 14 are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis agreed to in this agreement.

26.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//

14

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          28.  The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    NICOLA T. HANNA
     United States Attorney

9

10   _____          __3/18/2020__
     MACK E. JENKINS                             Date
11   VERONICA DRAGALIN
     Assistant United States Attorneys
12                                               __3/16/2020__
13   _____          Date
     JUSTIN KIM
14   Defendant

15   _____          __MARCH 16, 2020__
     DAVID VAUGHN                                Date
16   Attorney for Defendant
     JUSTIN KIM

17

18

19              CERTIFICATION OF DEFENDANT

20        I have read this agreement in its entirety.  I have had enough

21   time to review and consider this agreement, and I have carefully and

22   thoroughly discussed every part of it with my attorney.  I understand

23   the terms of this agreement, and I voluntarily agree to those terms.

24   I have discussed the evidence with my attorney, and my attorney has

25   advised me of my rights, of possible pretrial motions that might be

26   filed, of possible defenses that might be asserted either prior to or

27   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

28   of relevant Sentencing Guidelines provisions, and of the consequences

                                   15

of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____     _____
JUSTIN KIM                            Date  3/16/2020
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JUSTIN KIM's attorney.  I have carefully and thoroughly
discussed every part of this agreement with my client.  Further, I
have fully advised my client of his rights, of possible pretrial
motions that might be filed, of possible defenses that might be
asserted either prior to or at trial, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set

forth in this agreement is sufficient to support my client's entry of
a guilty plea pursuant to this agreement.

_____        MARCH 16, 2020
DAVID VAUGHN                             Date
Attorney for Defendant
JUSTIN KIM

17

1          **ATTACHMENT A**

2             FACTUAL BASIS

3          1.   Defendant and the USAO agree to the statement of facts

4    provided below and agree that this statement of facts is sufficient

5    to support a plea of guilty to the charge described in this agreement

6    but is not meant to be a complete recitation of all facts relevant to

7    the underlying criminal conduct or all facts known to either party

8    that relate to that conduct.

9    **A.    Defendant JUSTIN KIM's Role in CD-A**

10         2.   Defendant JUSTIN KIM ("KIM") was a real estate appraiser,

11   consultant, and fundraiser in the City of Los Angeles (the "City").

12   The City government received more than $10,000 per fiscal year in

13   funds from the United States in the form of grants, contracts,

14   subsidies, loans, guarantees, insurance, and other forms of federal

15   assistance.  Defendant KIM was one of the top fundraisers for

16   Councilmember A who was the City councilmember for Council District A

17   ("CD-A").  Defendant KIM was motivated to be one of Councilmember A's

18   top fundraisers in order to, at least in part, gain and maintain

19   access to real estate and business opportunities in CD-A.

20         3.   Beginning in early 2017, defendant KIM also was a close

21   political ally of City Staffer A-1, Councilmember A's staff member

22   and an employee of the City.  Defendant KIM and City Staffer A-1

23   strategized ways to protect Councilmember A to ensure Councilmember

24   A's power and relevance within the City, including repeatedly

25   discussing being loyal to Councilmember A, because, at least in part,

26   it meant securing future financial opportunities for defendant KIM

27   and City Staffer A-1.  Defendant KIM frequently referred to

28   Councilmember A as defendant KIM's "boss."  Defendant KIM supported

DEFT. INITIALS _JK_

1  Councilmember A's and City Staffer A-1's succession plan that would
2  maintain or increase financial opportunities for at least defendant
3  KIM and City Staffer A-1 after Councilmember A's term as
4  councilmember of CD-A expired.  These discussions included plans to
5  support the election of Councilmember A's relative for the CD-A seat,
6  ensuring political control for their allies in CD-A, and developing a
7  bribery scheme in CD-A, discussed further below.  On multiple
8  occasions, defendant KIM discussed with City Staffer A-1 the need to
9  ensure Councilmember A's relative was elected for their own political
10 and potential financial benefit and their own twelve-year plan, which
11 was based on Councilmember A's relative succeeding Councilmember A as
12 the councilmember for CD-A.

13        4.   On or around June 22, 2017, defendant KIM met with
14 Councilmember A, City Staffer A-1, and Lobbyist B and discussed
15 establishing two political action committees ("PAC") to raise money
16 for the campaign of Councilmember A's relative.  During this meeting,
17 Councilmember A suggested creating a second PAC and having defendant
18 KIM find an associate to serve as the "face" of the PAC to disguise
19 Councilmember A's involvement and the PAC's connection to CD-A.

20        5.   In sum, defendant KIM was motivated to help Councilmember A
21 maintain power in CD-A by getting Councilmember A's relative elected,
22 because, at least in part, defendant KIM would be poised to
23 financially benefit from potential illicit schemes in CD-A.  This
24 plan included potentially offering and providing financial benefits
25 in the hopes of receiving favored treatment by Councilmember A and
26 Councilmember A's staff, which would increase business opportunities
27 for defendant KIM.

28

DEFT. INITIALS  *JK*.                    2

**B.**   **Project C Bribery Scheme**

     a.   The Bribery Agreement and Payment

6.   Between August 2016 and July 2017, Developer C, owner of Company C, agreed to provide a $500,000 cash bribe to Councilmember A, through defendant KIM, in exchange for Councilmember A's assistance on Developer C's development project (the "bribery scheme").  Project C was a planned residential complex in CD-A.

7.   Developer C, through defendant KIM, initially provided $400,000 in cash that was intended for Councilmember A between February and March 2017.  In exchange, Developer C, through defendant KIM and City Staffer A-1, sought to use Councilmember A's influence as the councilmember of CD-A and a member of the Planning and Land Use Management ("PLUM") Committee to cause a labor organization to withdraw or abandon its appeal on Project C, thereby allowing the project to move forward in its City approval process.

8.   In the summer of 2016, Labor Organization A filed an appeal requesting to suspend all activity to implement Project C that required City approval until Project C was brought into compliance with the requirements of CEQA [California Environmental Quality Act] by correcting certain deficiencies (the "appeal").  The appeal prevented Project C from progressing through the rest of the City approval processes, including approvals by the PLUM Committee and City Council.

9.   On August 8, 2016, Developer C called defendant KIM and asked defendant KIM to obtain Councilmember A's assistance with the appeal, which could ultimately reach the PLUM Committee of which Councilmember A was a member.

DEFT. INITIALS _J.K._                3

10.  On August 9, 2016, Developer C sent a copy of the appeal to defendant KIM by e-mail, which defendant KIM then forwarded to City Staffer A-1.  On August 10, 2016, City Staffer A-1 confirmed receiving the e-mail.

11.  On September 1, 2016, defendant KIM, Councilmember A, City Staffer A-1, and another individual had dinner together and then visited a Korean karaoke establishment in Los Angeles (the "karaoke meeting").  During the karaoke meeting, defendant KIM asked Councilmember A for assistance with the appeal on Project C, and Councilmember A agreed to help.  Defendant KIM then called Developer C and asked Developer C to join the karaoke meeting, which Developer C did.

12.  On September 2, 2016, defendant KIM and City Staffer A-1 met for lunch in Los Angeles.  City Staffer A-1 expressed to defendant KIM that Councilmember A would not help Project C for free and that Councilmember A would require a financial benefit in exchange for help ensuring Project C moved forward through the City approval process.

13.  On September 3, 2016, defendant KIM and Developer C met at a bowling alley in Little Tokyo.  Defendant KIM conveyed to Developer C the message from Councilmember A and City Staffer A-1, namely that Councilmember A's assistance on Project C would require that Councilmember A receive a financial benefit.

14.  On January 17, 2017, defendant KIM, Councilmember A, and Developer C's business associates met at Councilmember A's City Hall office to discuss, among other things, Project C.  Shortly before the meeting, City Staffer A-1 sent defendant KIM a series of text messages, writing: "Let's you and I meet with [the] CM [Councilmember

DEFT. INITIALS _J.K._                    4

1 | A] after to talk about [Project C][.]  Make those ask about ...
2 | [Labor Organization A]."  Defendant KIM responded: "Yes."  During a
3 | private portion of the meeting that included only defendant KIM,
4 | Councilmember A, and City Staffer A-1, defendant KIM again asked
5 | Councilmember A for assistance with the appeal, and Councilmember A
6 | responded that Councilmember A could help.  Councilmember A stated
7 | that Councilmember A wanted defendant KIM to be a major supporter
8 | when Councilmember A's relative ran for Councilmember A's seat as the
9 | councilmember for CD-A.  Defendant KIM understood this to mean that
10 | he would have to, among other things, agree to provide or facilitate
11 | significant campaign contributions to Councilmember A's relative's
12 | future campaign.
13 |     15.  On January 18, 2017, defendant KIM and City Staffer A-1 met
14 | at a coffee shop in Little Tokyo.  During this meeting, City Staffer
15 | A-1 told defendant KIM that Lobbyist C stated it would cost
16 | approximately $1.2 million to $1.4 million to hire a lobbyist to
17 | attempt to resolve the appeal and allow Project C to move forward in
18 | the City approval process.  After this meeting, defendant KIM
19 | conveyed the cost of $1.2 million to $1.4 million to Developer C.
20 | Developer C made a counteroffer for Councilmember A to resolve the
21 | appeal for $500,000 in cash.
22 |     16.  In approximately February 2017, defendant KIM conveyed
23 | Developer C's counteroffer of $500,000 cash to City Staffer A-1.
24 | Defendant KIM understood that City Staffer A-1 then conveyed this
25 | counteroffer to Councilmember A.
26 |     17.  Between February 2, 2017 and February 10, 2017, defendant
27 | KIM had individual text message conversations with City Staffer A-1
28 |

DEFT. INITIALS  J.K.                    5

1  and Developer C, discussing the negotiation of the bribe payment and

2  the amount of the bribe payment from Developer C to Councilmember A.

3      18.   In approximately February 2017, defendant KIM and City

4  Staffer A-1 met at a restaurant in Los Angeles to discuss the bribe

5  payment amount.   Defendant KIM and City Staffer A-1 discussed that

6  Developer C agreed to pay $500,000 in cash in exchange for

7  Councilmember A's assistance in resolving the appeal so that Project

8  C could move forward in the City approval process, including

9  approvals by the PLUM Committee and City Council.

10      19.   In approximately February or March 2017, defendant KIM met

11  with Developer C at a commercial building in Los Angeles and received

12  a paper bag from Developer C containing $400,000 in cash, which was

13  intended to be a bribe Developer C agreed to pay for Councilmember

14  A's assistance in resolving the appeal.   After receiving $400,000 in

15  cash from Developer C, defendant KIM met with City Staffer A-1 in a

16  car in Los Angeles, and gave City Staffer A-1 cash to deliver to

17  Councilmember A.   Defendant KIM kept some cash for himself for, at

18  least in part, facilitating the bribe payment.

19      20.   In approximately February or March 2017, City Staffer A-1

20  conveyed to defendant KIM that Councilmember A helped resolve the

21  appeal.   Soon thereafter, defendant KIM informed Developer C that

22  Councilmember A held up Councilmember A's end of the agreement and

23  helped resolve the appeal.

24      b.   FBI Interviews of Defendant KIM

25      21.   On May 18, 2017, the FBI conducted a voluntary interview of

26  defendant KIM regarding a public corruption investigation (the "first

27  FBI interview").   At the beginning of the interview, defendant KIM

28  was advised that lying to the FBI was a crime.   During the interview,

DEFT. INITIALS _JK_.                6

1   defendant KIM sought to conceal his close relationship with City
2   Staffer A-1.  For example, when asked about City Staffer A-1 in
3   Councilmember A's office, defendant KIM stated that he was not that
4   close to City Staffer A-1 and understated the frequency with which
5   they communicated with each other.  During the interview, the FBI
6   told defendant KIM there was a federal grand jury investigation and
7   asked defendant KIM not to reveal the interview to others because it
8   may negatively impact the federal investigation.  Defendant KIM told
9   the FBI he agreed to not reveal such information to others.

10       22.  Nevertheless, on May 18, 2017, approximately one hour after
11  the first FBI interview, defendant KIM called City Staffer A-1 and
12  informed City Staffer A-1 that he believed someone was providing
13  information to law enforcement and that law enforcement was
14  conducting surveillance of one of City Staffer A-1's local hangouts.

15       23.  On July 10, 2017, the FBI again conducted a voluntary
16  interview of defendant KIM (the "second FBI interview").  At the
17  beginning of the interview, defendant KIM was advised that lying to
18  the FBI was a crime.  During the second FBI interview, defendant KIM
19  falsely stated that: (1) he had no "asks" of anyone in City Council;
20  (2) he had no work with any City employees; (3) he did not know of
21  anyone that worked for the City who did favors for people in exchange
22  for money, campaign contributions, or any other benefit; and (4) he
23  never provided any type of benefits including money or items to City
24  Staffer A-1.  Defendant KIM knew these statements were false because,
25  approximately just two months prior to the second FBI interview, he
26  coordinated a cash bribe payment to Councilmember A and City Staffer
27  A-1 in exchange for their help with Project C.  Moreover, defendant
28  KIM had personally delivered, on behalf of Developer C, cash to City

DEFT. INITIALS *JN.*                7

1 | Staffer A-1, a City staffer, that was meant by Developer C for
2 | Councilmember A, a City official, in order to secure their help.

3 |     24.  On July 12, 2017, just two days after defendant KIM's
4 | second FBI interview, defendant KIM and City Staffer A-1 met in
5 | person in a car near City Staffer A-1's residence, and then drove
6 | around in the car.  During this meeting, defendant KIM and City
7 | Staffer A-1 discussed the content of their recent respective FBI
8 | interviews, in which both defendant KIM and City Staffer A-1 lied to
9 | the FBI and deliberately failed to disclose information regarding the
10 | Project C bribery scheme.  During this meeting, defendant KIM asked
11 | City Staffer A-1 if Councilmember A wanted the remaining $100,000
12 | from Developer C, which City Staffer A-1 declined.

13 |        c.   The Remaining $100,000 Due for the Bribery Scheme

14 |     25.  In or around July 2017, defendant KIM falsely told
15 | Developer C that Councilmember A asked for the remaining $100,000
16 | bribe payment.  Developer C agreed to provide the remaining $100,000
17 | of the agreed-upon $500,000 bribe payment to be paid to Councilmember
18 | A for resolving the appeal.  Defendant KIM met with Developer C at a
19 | commercial building in Los Angeles and received an additional
20 | $100,000 in cash from Developer C.  Instead of providing this money
21 | to Councilmember A, defendant KIM kept this money for himself.

22 |        d.   Defendant KIM and Councilmember A Meet Regarding the
23 |             Bribery Scheme

24 |     26.  On October 5, 2018, defendant KIM and Councilmember A met
25 | at a hotel in Pasadena.  Councilmember A asked defendant KIM to turn
26 | off his cellphone during the meeting, likely to ensure their meeting
27 | was not recorded.  Councilmember A stated something to the effect of:
28 | "I didn't get my share," while simultaneously holding up two fingers.

DEFT. INITIALS _JK_.            8

1   Defendant KIM understood this to mean $200,000, which was

2   Councilmember A's share of the bribe payment from Developer C in

3   exchange for Councilmember A's help with the appeal.   Councilmember A

4   explained that Councilmember A did not get Councilmember A's share of

5   the bribe payment from Developer C because City Staffer A-1 was still

6   holding on to the cash.

7             e.   Developer C Advises Defendant KIM to Conceal the

8                  Bribery Scheme

9        27.   The FBI seized defendant KIM's phone pursuant to a federal

10   search warrant on March 5, 2019.   On or about March 20, 2019,

11   defendant KIM met Developer C at a coffee shop in Little Tokyo to

12   discuss the FBI investigation.   Defendant KIM told Developer C that

13   he was very scared.   Defendant KIM disclosed to Developer C that he

14   told his attorney about the $400,000 bribe payment.   Developer C got

15   upset and told defendant KIM he should have lied to defendant KIM's

16   attorney about the amount.   Developer C stated that now Developer C

17   could not match defendant KIM's story.   Months earlier, Developer C

18   informed defendant KIM that, years earlier, Developer C's business

19   was raided by law enforcement who seized a large sum of cash.

20             f.   Defendant KIM's Failure to Declare Income Related to

21                  the Bribery Scheme

22        28.   Defendant KIM failed to declare any of the cash he received

23   from Developer C for his role in facilitating the bribery scheme on

24   his federal income tax return for 2017, as required.

25

26

27

28

DEFT. INITIALS _JN_                    9

### PROOF OF SERVICE

I, Sandy Ear, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on March 18, 2020, I deposited in the United States mail at the United States Courthouse in the above-titled action, in an envelope bearing the requisite postage, a copy of: service was:

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ By Email, as follows:

☐ By Federal Express, as follows:

**David Vaughn, Esq.**
**350 S. Grand Ave., #3550**
**Los Angeles, CA 90071**

at his/her last known address, at which place there is a delivery service by United States mail.

This Certificate is executed on March 18, 2020 at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

1

2

3                                        /s/ *Sandy Ear*

4                                        SANDY EAR
                                         Legal Assistant

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28